IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | | |
|---|---|---|
| MICHAEL DUNSMORE, | ) | Cause No. CV 09-41-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN S. LAW; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On March 24, 2009, Petitioner Michael Dunsmore filed this action for writ of

habeas corpus under 28 U.S.C. § 2254.  Dunsmore is a state prisoner proceeding pro

se.

This document is lengthy, not because the case is complicated, but because

Dunsmore filed voluminous documents and several supplements in connection with

his Petition.  After a careful review of those documents, it is clear that Dunsmore is

not entitled to relief.  It also appears that Dunsmore does not understand the legal

basis of his conviction and sentence in Montana and the very broad nature of the Parole Board's responsibility and discretion.  The Court has attempted to explain.

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Id.  If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."  Id.

## II. Background

On September 17, 1991, Dunsmore was convicted in the State of Washington of second-degree child molestation.  His thirteen-year-old stepdaughter was the victim.  Judgment and Sentence at 1, State of Washington v. Dunsmore, No. 91-1-167-1 (Wash. Sup. Ct. Thurston County Sept. 17, 1991); Pet. Supp. (doc. 6 #1) at 1. He discharged the sentence on August 8, 1994.  Certificate and Order of Discharge at 1, Dunsmore, No. 91-1-00167-1.[1]

---

[1]  All cited documents that are not accompanied by a docket number ("doc. 6" is a docket number) were submitted as exhibits to the Petition.  They were deemed too lengthy to scan and are retained in paper form only.

Dunsmore later moved to Montana.  In 1999, based on the advice of a probation officer who was supervising him in connection with a 1996 felony burglary conviction in Lake County, Dunsmore registered as a sex offender.  Dunsmore contends that he did so as a "courtesy" to his probation officer, though he believed he had no legal obligation to register.  Pet. Supp. (doc. 1 #1) at 1-2.

Seven years later, on May 9, 2006, Dunsmore, acting with counsel, filed a petition seeking release from the registration requirement.  In the petition, he averred that he had committed "no offenses of any kind since residing in the State of Montana or the State of Washington subsequent to the conviction on the original matter herein."  Pet. to Release Offender Registration at 2, Dunsmore v. State of Montana, No. DV-06-384C (Mont. 11th Jud. Dist. May 9, 2006) (emphasis added).  Dunsmore personally verified the petition.  Id.

In fact, Dunsmore had been convicted of other offenses, including two felonies, theft and the burglary for which he was under supervision when he first registered as a sex offender.  Presentence Investigation at 2, State v. Dunsmore, No. DC-06-428A (Mont. 11th Jud. Dist. June 1, 2007); see also CONWeb, http://app.mt.gov/conweb (accessed June 1, 2009).  The State indicated it would contest Dunsmore's petition to be released from the registration requirement.

On September 12, 2006, Dunsmore was charged with one count of incest, a

felony.  Mot. for Leave to File at 1, <u>State v. Dunsmore</u>, No. DC-06-401B (Mont. 11th Jud. Dist. Sept. 12, 2006); Judgment and Sentence at 1, <u>Dunsmore</u>, No. DC-06-428A.[2]  On September 29, 2006, the State sought leave to file a separate charge of failure to register as a sex offender.  In the course of investigating the incest charge, a detective determined that Dunsmore had not lived at the address where he was registered since the second week of August 2006.  Aff. in Support of Mot. for Leave at 2, <u>Dunsmore</u>, No. 06-428A.  Leave was granted and Dunsmore was charged with failure to register.

On March 29, 2007, Dunsmore signed a plea agreement.  The incest charge was deferred in exchange for his guilty plea to failure to register.  Plea Agreement and Acknowledgment of Rights at 4, <u>Dunsmore</u>, Nos. DC-06-428A and DC-06-401B.  On June 15, 2007, Dunsmore signed a deferred prosecution agreement regarding only the felony incest charge.  He was required to "[r]emain law-abiding in all respects" for a three-year period.  Dunsmore waived his right to a speedy trial and agreed to tolling of the statute of limitations.  The agreement further stated that "if the Defendant satisfactorily completes the obligations undertaken by the terms of this agreement on or before the expiration of the period of deferment, to-wit: three (3) years," then the

---

[2]  The Information itself is not in the materials before the Court.  However, Dunsmore alleges that the trial court granted leave to file the Information on the same day the motion was filed.  Pet. Supp. (doc. 1 #1) at 4.

incest charge would be permanently dismissed.  Deferred Prosecution Agreement at 2, <u>Dunsmore</u>, No. DC-06-401B.  Four days later, on June 19, 2007, the incest charge was dismissed without prejudice.  Order of Dismissal at 1, <u>Dunsmore</u>, No. DC-06-401B.

On June 22, 2007, a sentencing hearing was held on the failure to register conviction.  Dunsmore was sentenced to serve five years in prison.  Written judgment was entered on August 6, 2007.  Judgment and Sentence at 1-2, <u>Dunsmore</u>, No. DC-06-428(A).

In July 2007, Dunsmore was screened for sex offender treatment.  The screening committee declined placement because Dunsmore was in prison based on his failure to register, not based on a sexual offense.  Treatment Request at 1 (Aug. 15, 2007).

In November 2007, Dunsmore applied for parole.  On November 30, 2007, the Montana Board of Pardons and Parole ("the Board") continued the hearing until Dunsmore obtained a polygraph examination.  Case Disposition at 1 (Nov. 30, 2007).  On March 28, 2008, the Board again continued the case "for further investigation."  It explained that Dunsmore "said he had registered for 17 years and then failed to register for only 5 weeks w/ a terrible story.  We want to know what the truth is."  Case Disposition at 1 (Mar. 28, 2008).

On May 29, 2008, the Board denied parole and passed Dunsmore to discharge, meaning that he would not automatically be reconsidered for parole before his discharge date in 2011.  As the reasons for its decision, the Board noted "Nature and severity of offense(s)," "Previous criminal history," "Pattern of similar offenses," "Multiple offenses," and "Repeat sex offenses."  The Board also said that Dunsmore was "very deceptive in recent administered polygraph."  The Board stated that Dunsmore needed sex offender treatment and that he could request a reappearance before his discharge date if he completed the second phase of the prison's sex offender treatment program ("SOP II").  Case Disposition at 1 (May 29, 2008).

On June 2, 2008, a screening committee approved Dunsmore for SOP II.  Blair Hopkins signed the form.  Treatment Request at 1 (June 2, 2008).  On June 26, 2008, Dunsmore asked Hopkins when he could start SOP II.  On June 30, 2008, Hopkins responded, "Last time we met you denied any past sexually inappropriate behavior.  Therefore you will not be able to participate in S.O. treatment."  Request Form at 1 (June 30, 2008).

On September 8, 2008, Dunsmore was notified that he would begin SOP II on September 29, 2008.  Group Notification at 1 (Sept. 8, 2008).  On October 3, 2008, Dunsmore refused treatment.  Group Therapy Participation Report at 1 (Oct. 3, 2008).  He filed grievances stating that the sentencing court had not required him to complete

sex offender treatment.  Informal Resolution Form at 1-2 (Oct. 9, 2008).  As a result of his noncompliance with SOP II, he was reclassified to a higher security level and transferred from Montana State Prison to Crossroads Correctional Center on October 14, 2008.  Reclassification Instrument at 2 (Nov. 14, 2008); Inmate Appeal of Classification Action at 1 (Nov. 26, 2008).

On or about October 28, 2008, Dunsmore, acting pro se, filed a petition for writ of habeas corpus in the Montana Supreme Court.  He challenged parole conditions, his duty to register as a sex offender, the effectiveness of his defense counsel, and payment of restitution.  The Montana Supreme Court held that Dunsmore was required to register, upheld the restitution requirement, and recharacterized the remainder of the petition as an untimely and procedurally barred petition for postconviction relief.  The writ was denied on January 22, 2009.  Order at 3, Dunsmore v. Mahoney, No. OP 08-0571 (Mont. Jan. 22, 2009).[3]

On or about December 22, 2008, Dunsmore filed a second petition for writ of habeas corpus in the Montana Supreme Court, challenging the denial of his application for parole.  The Montana Supreme Court affirmed the Board's authority to require a polygraph examination and sex offender treatment.  The writ was denied

---

[3] Dunsmore's petition names Warden Sam Law, of Crossroads Correctional Center, as the Respondent.

on January 28, 2009.  Dunsmore v. Law, No. OP 08-0648 (Mont. Jan. 28, 2009).

Dunsmore filed a petition for rehearing on or about February 12, 2009.  Pet. for Reh'g

at 7, Dunsmore No. OP 08-0648.[4]  Rehearing was denied on February 26, 2008.

Order at 1, Dunsmore, No. OP 08-0648.

On or about March 20, 2009, Dunsmore submitted a petition for rehearing in

Cause No. OP 08-0571.  Pet. for Reh'g at 1, Dunsmore, No. OP 08-0571 (signed Mar.

20, 2009).  The petition was not filed and was returned to Dunsmore because it was

untimely.  Letter at 1 (Feb. 19, 2009); Letter at 1 (Feb. 26, 2009).

On March 17, 2009, Dunsmore filed a petition for writ of habeas corpus in this

Court.  Pet. (doc. 1) at 15, Pet'r Decl. ¶ C.  On April 3, 2009, Dunsmore filed a

"motion to supplement the record," which was filed as a supplement to the petition.

He amended his Petition to name the correct Respondent on April 7, 2009.

On April 2, 2009, Dunsmore filed a petition for writ of habeas corpus in the

Western District of Washington.  The action was transferred to this Court on April

10, 2009.  Dunsmore v. Law No. C09-473-JCC-BAT (W.D. Wash. April 10, 2009).

That petition was filed in this case as a second supplement (doc. 8) to the Petition on

April 24, 2009.  Second Supp. (doc. 8) at 1-20.

---

[4]  The date line says "12 day of January," but the original petition was not denied until two and a half weeks after that.  Presumably Dunsmore signed the petition in February.

## III. Dunsmore's Allegations

Dunsmore alleges six grounds for relief in his federal habeas petition, directed primarily at alleged errors by the Montana Supreme Court in handling his two habeas cases under state law.  He also alludes to thirty-six claims for relief and asks the Court to locate them in the petitions he filed in the Montana Supreme Court.  Pet. at 6-9.

In his "Motion to Supplement the Record," Dunsmore objects to his "tier level" designation on a Sexual and Violent Offender Registration Form, dated October 30, 2001, and alleges that he was reclassified in retaliation for his refusal to take SOP II, even though it was not required by the sentencing court.  Supp. (doc. 6) at 1-2.

In the petition he filed in the Western District of Washington, Dunsmore stated that he intended to "attack the 'jurisdiction' (interstate)  of a 'Montana' court to impose (interject) themselves into a 'contract' that had been between myself and 'Washington' state, which 'contract' had also long since expired by – essentially – re-opening that 'contract.'"  Second Supp. (doc. 8) at 5.

The "Closing" to his federal petition states, in summary fashion, why he believes he is entitled to federal habeas relief against his conviction:

> After this Court's diligent investigation, it should be clear that Dunsmore "discharged" his sentence in Washington State, and was never court ordered to "register" (even though ample opportunities were given) by any court.  It also should be clear that both Dunsmore's attorneys (Falla/Paskell) did not represent his best interest; failed to

produce documents of his discharge; point out the illegal order by a probation officer; and the date of that order to register; point out the lengthy chasm of time between "discharge" and an order to "register."

Dunsmore had gotten life together for many years; family life established; became a functional member of the community; successful business owner; father of six; to <u>now</u> sitting in "prison" for a long since <u>expired</u> – out of state – "contracted" plea which "contract" had completely terminated prior to being <u>unlawfully</u> <u>recharged</u> by another state (Montana) that had (obviously) never been a "party" to that out of state "contract" and therefore – as absurdly ridiculous as it may sound – <u>Montana</u> effectively "breached" (no "Order" at all, other then <u>this</u> "sentence").

Dunsmore's <u>Washington</u> state plea "contract" had successfully and completely terminated as per the terms of that "contract."  In short, Montana had no authority; jurisdiction; nor lawful right to re-open (2006) an out of state (or any) expired (1994) "contract" to include terms (ramifications, e.g. "registering" <u>for</u> <u>life</u>) that were not an original agreed component <u>of</u> that out of state "contract."

Pet . at 10-11 (emphases in original); <u>see also</u> Pet. Supp. (doc. 1 #1) at 1-4.

## IV. Analysis

Although some or all of Dunsmore's claims may be barred on procedural grounds, such as procedural default or the federal statute of limitations, it is clear that he is not entitled to relief on the merits of his claims.  Accordingly, it is more efficient to proceed to the merits.  <u>See, e.g.</u>, 28 U.S.C. § 2254(b)(2); <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1198 (9th Cir. 1983).

## A. Conviction and Sentence for Failure to Register

### 1. Registration Requirement

Montana law, not Dunsmore's "contract" under Washington law, required him to register as a sex offender.[5]

In 1989, Montana implemented a sex offender registration requirement.  Mont. Code Ann. § 46-23-504 (1989).  At that time, the registration requirement applied to persons convicted in another state of a crime "reasonably equivalent to a violation" specified under Montana law.

To prove second-degree child molestation, the State of Washington was required to prove the following elements:

1. The defendant had sexual contact with the victim;

2. The victim was not married to the defendant;

3. The victim was between 12 and 14 years old; and

---

[5]  Washington law also required Dunsmore to register as a sex offender.  The judgment entered in September 1991 said, in capital letters, "PURSUANT TO LAWS 1990, CHAPTER 3 § 402, THE DEFENDANT IS REQUIRED TO REGISTER WITH THE COUNTY SHERIFF FOR THE COUNTY OF THE DEFENDANT'S RESIDENCE." Judgment and Sentence at 4, Dunsmore, No. 91-1-167-1 (Wash. Sup. Ct. Thurston County Sept. 17, 1991).  The reference to "Laws 1990, Chapter 3 § 402" was a reference to Washington's registration requirement for sex offenders.  Wash. Rev. Code Ann. § 9A.44.130(1) (West 1991); 1999 Wash. Laws ch. 3 § 402 (eff. Feb. 28, 1990).

While Montana law independently imposed a registration requirement on him, regardless of Washington's requirement, it is worth pointing out that Dunsmore knew there were registration requirements in at least some states and he was likely to be subject to them.  His contention that Washington law did not require him to register is both irrelevant and incorrect.

4.  The defendant was more than thirty-six months older than the victim.

Wash. Rev. Code Ann. § 9A.44.086(1) (West 1991).

At the time Dunsmore committed the offense for which he was convicted in Washington, Montana law did not contain an offense called "child molestation in the second degree."  But Montana law contained an offense called sexual abuse.  In the context of sexual contact with a child, the Montana statute required the State to prove the following elements:

1.  The defendant had sexual contact with the victim;

2.  The victim was not married to the defendant;

3.  The victim was less than 14 years old;

4.  The defendant was three or more years older that the victim.

Mont. Code Ann. § 45-5-502(5) (1989).  If the victim was between the ages of  14 and 16, the State could prove a violation of § 503 by proving one additional element, lack of consent.  Id. § 503(3).  The crime defined in § 503(3) is the same as the crime defined in § 503(5), except that lack of consent was necessarily established if the victim was under 14.

Washington's definition of "sexual contact" was the same as Montana's. Compare Wash. Rev. Code Ann. § 9A.44.010(2) ("any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either

party") <u>with</u> Mont. Code Ann. § 45-2-101(60) ("any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party").

Dunsmore was convicted of having sexual contact with a girl twelve years old. Based on the same facts, he could have been convicted under Montana law of violating either Mont. Code Ann. § 45-5-502(3) or § -502(5). Both of those offenses are "reasonably equivalent" to Wash. Rev. Code Ann. § 9A.44.086. Conviction of an offense equivalent to Mont. Code Ann. § 45-5-502(3) triggered a registration requirement for Dunsmore when he moved to Montana. Mont. Code Ann. § 46-23-502(3)(a) (1989).

Based solely on Montana law, and regardless of the terms of the Washington plea agreement or judgment, Dunsmore was required to register as a sex offender when he moved to Montana.

### 2. Duration of Requirement

Dunsmore was originally required to register under Montana law for a period of ten years from the date of his conviction, until September 17, 2001. Mont. Code Ann. § 46-23-506(1) (1989). In 1995, the registration requirement was extended to "the remainder of the person's life." Mont. Code Ann. § 46-23-506(1) (1995).

Neither the original Act, passed in 1989, nor the 1995 amendment, making

registration a lifelong obligation, purported to be retroactive.  But, in <u>State v. Mount</u>, 78 P.3d 829 (Mont. 2003), a person convicted of a sex offense in 1984 was held to be subject to both the 1989 Act and the 1995 amendment, because a 1997 amendment made the law retroactive to "sexual offenders . . . who are in the custody or under the supervision of the department of corrections on or after July 1, 1989." <u>Id.</u> at 832 ¶¶ 1, 5-8, 11.[6]

Dunsmore was under the supervision of the department of corrections when he met with his probation officer, who told him he was required to register, on April 10, 1999.  Pet. Supp. (doc. 1 #1) at 1-2.  Therefore,  he is required to register for life.

### 3. Conclusion

Neither the registration requirement imposed against Dunsmore under Washington law, nor his plea agreement in Washington, nor the discharge of his Washington conviction in 1994 is relevant.  His obligation to register and its lifelong duration, absent a successful petition to the trial court, were clearly defined by Montana law.  Dunsmore knew he needed to petition a court to be relieved of the obligation to register.  He did not need an attorney to tell him that he had to continue

---

[6]  The registration requirement is not part of the original sentence but a separate, non-punitive, regulatory requirement.  <u>Mount</u>, 78 P.3d at 841 ¶¶ 89-90; <u>see also</u> <u>Smith v. Doe</u>, 538 U.S. 84, 105-06 (2003) (holding that retroactive application of offender registration requirement does not violate Ex Post Facto Clause).

his registration unless and until his petition was granted. Counsel's failure to so instruct him, Pet. Supp. (doc. 1 #1) at 3, was not incompetent, nor can any resulting prejudice be fairly attributed to counsel rather than Dunsmore himself. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 693 (1984).

The District Court should deny all of Dunsmore's claims challenging the validity of his conviction or sentence for failure to register as a sex offender.

### B. Parole

#### 1. Parole Under Montana Law

Dunsmore was sentenced to serve five years in prison for failing to register as a sex offender. Under Montana law, a prisoner is not entitled to parole unless and until the Parole Board, in its discretion, finds that early release will not be a "detriment to the prisoner or to the community" and that the prisoner will be "able and willing to fulfill the obligations of a law-abiding citizen." Mont. Code Ann. § 46-23-201(1), (5). A sentencing judge may condition parole eligibility on various factors, <u>id.</u> § 18-202(1)(f), (2), but the Board makes the ultimate decision whether to grant parole and, if so, under what conditions, <u>id.</u> §§ 23-201(1), 215(1), (2). Neither federal nor state law limits the Board's consideration to factors bearing directly on the crime of conviction or to matters proved beyond a reasonable doubt in a court of law. At most, federal law requires only that there be "some evidence" to support the

Board's decision, Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007) (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)), meaning "any evidence in the record that could support the conclusion reached," Hill, 472 U.S. at 455-56.

### 2. Fifth Amendment Claim

The Fifth Amendment privilege against compulsory self-incrimination must be honored by the States.  Malloy v. Hogan, 378 U.S. 1, 6 (1964).  To show a Fifth Amendment violation, Dunsmore must show both incrimination and compulsion.  If there is no danger of prosecution, the incrimination element is not met.  Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) (where threat of incrimination is eliminated, witness may be compelled to answer); Brown v. Walker, 161 U.S. 591, 598 (1896) (no incrimination where statute of limitations has expired and prosecution is no longer possible).  If the penalty for refusing self-incrimination is not substantial enough, the compulsion element is not met.  Putting a person to a hard choice between incriminating himself or remaining  silent does not constitute compulsion.  Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 277-78, 286-87 (1998) (no compulsion where inmate facing execution could either submit to interview with clemency board, knowing that he would not have counsel and could be required to make incriminating statements that would subject him to further prosecution, or forego interview and risk adverse determination by clemency board); Searcy v.

Simmons, 299 F.3d 1220, 1226-27 (10th Cir. 2002) (no compulsion where inmate was denied opportunity to earn good-time credits as a result of transfer following expulsion from sex offender treatment program).

In Dunsmore's case, the Board did not impose completion of SOP II as a precondition to parole eligibility. It recognized Dunsmore's eligibility. It simply was not convinced that early release was a good idea. It passed him to discharge, but it also said that Dunsmore could, if he completed SOP II, reapply for release on parole.

In June 2008, Dunsmore was not eligible for SOP II because he "denied any past sexually inappropriate behavior." Request Form at 1 (June 30, 2008) (emphasis added). At that time, he stood convicted of a sex offense in Washington – an offense for which he could not be reprosecuted. Dunsmore could not have risked prosecution by admitting that he molested his stepdaughter in 1991. The incrimination element was not met in this instance.

Later, when Dunsmore was notified that he would begin SOP II in late September, 2008, he refused treatment because the sentencing court had not ordered it. Informal Resolution Form at 1-2 (Oct. 9, 2008). There is no Fifth Amendment claim to be made in this instance.

Dunsmore also objects to the Board's requirement that he complete SOP II before requesting a reappearance on his parole application. Assuming that self-

incrimination could occur if Dunsmore completed SOP II, the Board did make Dunsmore choose between silence and the risk of self-incrimination. But that is no different than requiring an inmate facing execution to choose between remaining silent and submitting to an interview without counsel and with the risk of incrimination – no different, that is, except that the inmate facing execution incurred consequences far more serious than Dunsmore faces. If compulsion was not established in Woodard, it is certainly absent in Dunsmore's case.

### 3. Polygraph

Any claims regarding use of a polygraph in SOP II are dealt with under the Fifth Amendment heading. It appears that the Board ordered a polygraph examination to assist it in determining whether Dunsmore was telling it the truth. Dunsmore objects that polygraph evidence is inadmissible under Montana law. The Board is not a court, and its deliberations need not be based only on evidence that would be admissible in a court of law.[7]

----

[7] The Supreme Court recognizes the considerable difference between judicial proceedings and a parole board's responsibilities:

> Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. . . . The parole-release decision . . . is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. . . . [T]here is no set of facts which, if shown, mandate a decision favorable to the

## 4. Information Relied on by Parole Board in Denying Parole

Dunsmore claims the Board relied on inaccurate information regarding the incest charge.

When the trial court granted the State leave to file an Information, it found probable cause to support the incest charge. Mont. Code Ann. § 46-11-201(2) (2005). Under Montana law, the probable cause determination is not a contested stage of the case. Id.[8] Federal constitutional law does not require an opportunity for the defendant to be heard at the outset of the prosecution. E.g., United States v. Williams, 504 U.S. 36, 51 (1992) (holding that a defendant in a federal criminal case has no right to present a defense to the grand jury and no right to require the prosecution to present exculpatory evidence to the grand jury).[9] Probable cause to

_____

individual.
Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1,7, 9-10 (1979).

[8] Dunsmore cites Montana's Uniform District Court Rule 2, see Pet. Supp. (doc. 1 #1) at 4, to show that motions are to be determined in an adversarial process. Rule 2 is a briefing schedule. It does not alter the procedures by which a prosecution may be commenced. The Montana Legislature defines those procedures in the Montana Code Annotated.

[9] The case cited by Dunsmore, Gerstein v. Pugh, 420 U.S. 103 (1975), see Pet. Supp. (doc. 1 #1) at 4, considered whether an information supported only by a prosecutor's determination of probable cause was sufficient to support detention for about thirty days before any hearing before a judge. Id. at 105. Here, the trial court's order granting leave to file the Information constituted the judicial fact-finding required by Gerstein, id. at 117 – assuming, for the sake of argument, that Dunsmore was arrested and detained pending trial. If he was not, federal law did not entitle him to a judicial determination of probable cause. In fact, Gerstein specifically "adhere[d] to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information." Id. at 119; see also Albright v. Oliver, 510 U.S. 266, 272-75 (1994) (declining to recognize substantive due process right "to be free from prosecution except on the basis of probable cause").

support the incest charge against Dunsmore was established under Montana law and procedure.  The Board was entitled to consider it as "some evidence" that Dunsmore committed incest.

Dismissal of the incest charge did not cut off the Board's consideration of it. The charge was dismissed without prejudice under the deferred prosecution agreement.  The order of dismissal without prejudice signed by Judge Stadler on June 19, 2007, is what the plea agreement contemplated.  The dismissal does not rest on a factual finding and does not alter the original finding of probable cause.

Dunsmore has not shown that the Board relied on false or incorrect information.  The filing of the incest charge was "some evidence" that Dunsmore committed incest.  In addition, Dunsmore's history included theft and burglary – as well as his deceit before the Board and his outright whopper in his petition to be released from the registration requirement.  The Board's finding that parole was inappropriate because of the nature and severity of his offenses, previous criminal history, multiple offenses, pattern of similar offenses, and multiple sex offenses was not based on misinformation.

### 5. Tier Level

Dunsmore's tier level reflects an assessment of the likelihood that he will commit another sexual offense.  Mont. Code Ann. § 46-23-509(2)(a)-(c) (2005).  It

was not established or required to be established by the terms of his plea agreements in Washington or in Montana.  It was not required to be established by any of the judgments entered against him in Montana, because he has not been sentenced for a sexual offense in Montana.  Id. § 509(3).  He has no legally cognizable expectation of any particular level designation.  Id. § 509(5).  Federal constitutional rights are not implicated in his tier level designation.

### 6. Retaliatory Reclassification

Reclassification to a higher custody level after rejection from a sex offender treatment program does not violate federal law.  McKune v. Lile, 536 U.S. 24, 39-40 (2002) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  Nor is there a reason to believe that Dunsmore's reclassification was retaliatory.  The sex offender treatment program is in high demand.  Reclassifying Dunsmore and moving him back to Crossroads was not only reasonable but customary.

### C. Alleged Errors in Proceedings in the Montana Supreme Court

Dunsmore's allegations against the Montana Supreme Court do not identify any respect in which he was deprived of due process.  Any error – and this Court sees none – would be harmless, because Dunsmore did not identify any legal infirmity in his conviction or sentence or in the denial of his application for parole.

### V. Certificate of Appealability

**A. Governing Law**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).   The standard of a "substantial showing" can be satisfied on an issue-by-issue basis.  Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Any doubt as to whether a petitioner has met the standard is resolved in his favor.  Lambright, 220 F.3d at 1025.  The Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1) (emphasis added).

**B. Discussion**

Dunsmore's claims arise from fundamental misunderstandings of the law.  His

various claims against his conviction for failure to register as a sex offender arise from the assumption that his registration obligation was triggered by his Washington plea agreement, or Washington law, or someone's communication of the requirement to him, or from the assumption that his registration obligation terminated when he discharged his Washington conviction. In fact, Montana law clearly obligated him to register for life. He has not identified any constitutional basis on which his conviction or sentence could be challenged.

Dunsmore's parole claims also arise from misunderstandings of the law. He has not identified any act or requirement imposed by the Parole Board that led or must lead to compulsory self-incrimination. The Board was free to require him to take a polygraph examination to assist it in determining whether what he told them was the truth. He has not identified any incorrect information underlying the Board's decision. He cannot establish a constitutionally protected interest under state or federal law in his tier level designation (a measure of the likelihood of his committing another sexual offense). Increasing his custody level and transferring him after he declined to participate in sex offender treatment is clearly not constitutionally offensive.

Finally, the Montana Supreme Court honored Dunsmore's right to due process. Any violation of due process could only have been harmless, because Dunsmore has

not identified any constitutional infirmity in his conviction or sentence or in the denial of his application for parole.

Dunsmore has not made a showing, much less a substantial one, that his constitutional rights have been violated.  There is no reason to encourage further proceedings.  A COA should be denied as to all issues.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The Petition (docs. 1, 6, 8) should be DENIED on the merits.

2.   The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Dunsmore.

3.  A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Dunsmore may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject,

or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Dunsmore must immediately notify the Court of any change in his mailing address.  Failure to do so may result in dismissal of his case without notice to him.

DATED this 15th day of June, 2009.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge